UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAHRA SHOKRI VARNIAB, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH B. EDLOW, et al.,<br><br>Defendants. | Case No.  25-cv-10602-SVK<br><br>**TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE ISSUANCE OF PRELIMINARY INJUNCTION**<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 56, 81 |

Plaintiffs, medical doctors who are married to each other, lawfully immigrated to the United States from Iran in March 2023.  In May 2025, each Plaintiff filed a Form I-485 application for adjustment of status and a Form I-765 application for employment authorization. Earlier in this case, the Court issued a preliminary injunction requiring the United States Citizenship and Immigration Services ("USCIS") to adjudicate Plaintiffs' applications.  At the time the Court issued the preliminary injunction, Plaintiffs' applications were on hold due to a USCIS policy that placed a hold on final adjudication of applications for immigration benefits filed by applicants from a number of countries, including Iran.  In issuing the preliminary injunction, the Court found that Plaintiffs were likely to succeed on their claims that the USCIS adjudication hold policy was illegal.  The urgency necessitating a preliminary injunction included the fact that Plaintiff Zahra Shokri Varniab, who at the time was employed as a Postdoctoral Research Fellow at Stanford University, had applied for a medical residency program and would learn on March 20, 2026 whether she had matched with a program.  If she matched with a program, she would need to sign a contract and would need a valid work authorization shortly

United States District Court
Northern District of California

thereafter.

Following issuance of this Court's preliminary injunction, USCIS adjudicated Plaintiffs' applications by denying them all. The denials stemmed largely from USCIS's conclusion that Plaintiff Varniab had made a material misstatement because in visa applications she had filed in March 2024 and April 2025, she had stated her intention to work as a medical researcher, whereas in a declaration she filed in this case on February 11, 2026 (as well as a USCIS interview at around the same time), she stated that she was seeking a medical residency as a step towards becoming a practicing physician. Soon thereafter, the USCIS also took a step further by issuing Notices of Intent to Revoke ("NOIRs") already-granted visa petitions filed by Plaintiff Varniab before she filed the applications at issue in this case, again based on what the agency characterized as an inconsistency between her original intention to engage in medical research and her later intention to seek a medical residency. On the same day USCIS denied Plaintiffs' immigration applications, Plaintiff Varniab matched to a medical residency program at the University of California San Diego, which is set to begin in a few days, on June 22, 2026.

Since this Court issued the preliminary injunction, numerous other courts have issued preliminary relief to other plaintiffs challenging the USCIS adjudication hold policies. In addition, USCIS has now excluded applications from medical physicians from the adjudication hold. Most recently, a federal district court in the District of Rhode Island declared USCIS's adjudication hold policies, and several others, unlawful and set them aside as contrary to law and arbitrary and capricious, finding that in enacting the policies, USCIS "claims statutory and regulatory authority that it does not possess; makes decisions without the reasoned explanations that it must provide; acts without regard for the reliance interests of applicants that it must consider; and justifies its actions with pretextual concerns of 'national security' that mask anti-immigrant sentiments that it is forbidden from letting influence its decision-making." *Dorcas Int'l Inst. of Rhode Island v. USCIS*, No. 26-cv-132-JJM, PAS, -- F. Supp. 3d --, 2026 WL 1622708, at *1 (D.R.I. June 5, 2026).

As evidenced by these developments, the challenges to the USCIS adjudication hold policies mounted by Plaintiffs in this case have been validated here and elsewhere. Had Plaintiffs not been as proactive in asserting their rights, they might have benefited from USCIS's suspension

of the hold policies as to physicians or the later rulings of other courts. Yet Plaintiffs find themselves in a situation where their applications for adjustment of status and employment authorization have been denied, in large part based on information they provided in this litigation. Most urgently, as things stand, Plaintiff Varniab does not have employment authorization to begin her medical residency on June 22.

After USCIS denied Plaintiffs' applications and issued the NOIRs, Plaintiffs filed a Second Amended Complaint, alleging new claims, including claims that the Government violated their constitutional rights by retaliating against them for bringing this lawsuit. Now before the Court is the Government's motion to dismiss the Second Amendment Complaint, which argues that none of the conduct alleged by Plaintiffs is subject to judicial review. Also before the Court is Plaintiffs' motion for a temporary restraining order or temporary injunction, which the Government opposes on the same jurisdictional grounds. The Court determines that circumstances warrant ruling on these motions without oral argument. *See* Civil L.R. 7-1(b).[1] For the reasons that follow, both the Government's motion to dismiss and Plaintiffs' motion for a temporary restraining order are **GRANTED-IN-PART and DENIED-IN-PART**.

## I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In December 2025 and January 2026, USCIS issued Policy Memoranda that placed an "adjudicative hold" on a wide range of pending requests for immigration benefits filed by aliens from a list of several countries, including Iran. *See* Dkt. 8-1 at 1, 2-3; Dkt. 8 ¶ 52. Plaintiffs' applications for permanent residency and work authorization were subject to the adjudicative hold. Dkt. 21 at 7.[2]

On December 11, 2025, Plaintiffs filed this action against Defendants (the "Government")

---

[1] As demonstrated in Plaintiffs' TRO motion, time is of the essence. Further, the Court has previously heard argument on subject matter jurisdiction (*see* Dkt. 35), Plaintiffs expressly waive argument on the TRO motion (Dkt. 81 at 2), and the Government does not request it (*see* Dkt. 82).

[2] In a press release dated March 30, 2026, USCIS announced that it had lifted the hold as to "applications associated with medical physicians." https://www.uscis.gov/newsroom/alerts/update-on-uscis-strengthened-screening-and-vetting (last visited June 11, 2026). As discussed below, by that time this Court had already issued a preliminary injunction requiring adjudication of Plaintiffs' applications, and USCIS had denied their applications.

to compel USCIS to adjudicate their Form I-485 and Form I-765 applications.  Dkt. 1.  Plaintiffs filed a First Amended Complaint on January 1, 2026.  Dkt. 8.  Plaintiffs then moved for a preliminary injunction directing the Government to complete adjudication of their pending applications.  Dkt. 9.  In an order dated February 20, 2026, the Court granted Plaintiffs' motion and issued a preliminary injunction that required USCIS to adjudicate Plaintiffs' applications within 30 days.  Dkt. 35 (the "PI Order").  The PI Order contains a more detailed factual discussion concerning Plaintiffs and the background of this case.

Following issuance of the PI Order, USCIS denied both Plaintiffs' applications for adjustment of status and both Plaintiffs' applications for employment authorization.  Dkt. 42-1, 42-2, 44-1.  The denial of Plaintiff Varniab's Form I-485 application stated that "[a]fter reviewing the evidence and the testimony provided at your interview, USCIS is denying your application as a matter of discretion."  Dkt. 44-1 at PDF p. 7.  The denial letter recited the following history regarding Plaintiff Varniab:

- "You filed an Immigrant Petition for Alien Worker (Form I-140) on March 20, 2024, as a post-doctoral researcher seeking classification as a member of the professions holding an advanced degree or of exceptional ability, and a national interest waiver of the job offer requirement attached to the employment-based second preference (EB-2).  The petition was approved on April 12, 2024."  *Id.* at PDF pp. 7-8.

- "You then filed a second Form I-140 on April 17, 2025, as a self-petitioner seeking classification as an alien of extraordinary ability (E11 Form I-140) as a post-doctoral researcher in the field of medicine.  On Form I-140, you indicated that you were a researcher in medicine who intended to work as a postdoctoral scholar.  You described your duties as researching and developing novel imaging approaches to visualize, characterize, and quantify molecular and cellular processes involved in disease etiology and treatments.  USCIS approved Form I-140 on May 2, 2025."  *Id.* at PDF p. 8.

- "On May 12, 2025, you filed an Application to Register Permanent Residence or Adjust Status (Form I-485). The E11 Form I-140 formed the basis for eligibility for the instant application for adjustment of status while the EB-2 Form I-140 provided the priority date for eligibility for an immigrant visa."  *Id.*

- On February 5, 2026, you appeared for an interview at the USCIS San Jose Field Office for purposes of assessing your eligibility for adjustment of status. During the interview and review of your application, you testified that the information on your Form I-485, along with any amendments made during the adjustment interview, and supporting evidence were true and correct. At the interview, you provided testimony under oath." *Id.*

The denial letter then set forth an explanation of the reasons USCIS denied Plaintiff Varniab's Form I-485 application, stating that during her interview, she "provided answers to a USCIS officer that are inconsistent with information in your Form I-140 filings which substantively are very similar." *Id.* The denial letter also asserted that Plaintiff Varniab's "answers also contradict a sworn declaration you submitted to the United States District Court on February 11, 2026," referring to a declaration she had filed in this case. *Id.* The alleged inconsistencies and contradictions identified in the denial letter centered on the fact that Plaintiff Varniab stated in her February 2026 declaration and USCIS interview that she had applied for medical residency, whereas "the basis of both I-140 petitions involve post-doctoral research, not clinical physician work, and [her] intention to instead seek medical residency was not mentioned in either of [her] Form I-140 petitions." Dkt. 44-1 at PDF pp. 8-9.

Plaintiff Langroudi's Form I-485 application for adjustment for status, which he had filed as a spouse derivative beneficiary of Plaintiff Varniab, was denied because of the denial of Plaintiff Varniab's Form I-485. Dkt. 44-1 at PDF p. 4 ("An applicant adjusting status as a derivative beneficiary is only entitled to the same immigrant status as the principal beneficiary. See INA 203(d).").

USCIS denied both Plaintiffs' Form I-765 applications for employment authorization, informing them that "your Form I-485 was denied on March 20, 2026" and "[t]herefore, you are not eligible to receive employment authorization under 8 CFR § 274a.12(c)(9)." Dkt. 44-1 at PDF pp. 12, 14.

Thus, the denial of Plaintiff Varniab's Form I-485 application for adjustment of status also resulted in the denial of Plaintiff Langroudi's Form I-485 as well as both Plaintiffs' Form I-765 applications for employment authorization.

On March 23, 2026, USCIS took the additional actions of issuing a Notice of Intent to

5

Revoke ("NOIR") each of Plaintiff Varniab's previously-approved I-140 petitions. Dkt. 49-16, 49-17. As with the denial of her Form I-485 application, the NOIRs focus on an alleged inconsistency regarding the stated basis of her I-140 petitions (work as a medical researcher) and her subsequent application for a medical residency program with the stated intention of becoming a practicing physician, as outlined in her February 2026 USCIS interview and "her sworn statements before the court." *See, e.g.,* Dkt. 49-16 at PDF pp. 5, 6, 8, 10; Dkt. 49-17 at PDF pp. 2-3, 8. The NOIR concerning the National Interest Waiver (EB-2) I-140 petition concludes that "the original basis" for the approval the petition "no longer exists" and "[a]s such, USCIS intends to revoke the approval of the present petition with a finding of willful misrepresentation of the material facts regarding the nature of the petitioner's proposed endeavor." Dkt. 49-16 at PDF p. 10. Similarly, the NOIR concerning the alien of extraordinary ability (EB-1A) I-140 petition concludes that "the claims made by the petition in conjunction with Form I-140 were not true" and that USCIS intends to "revoke Form I-140." Dkt. 49-17 at PDF pp. 8-9. Both NOIRs gave Plaintiff Varniab 30 days to submit evidence in response. Dkt. 49-16 at PDF pp. 10-11; Dkt. 49-17 at PDF p. 9.

At a March 24, 2026 Case Management Conference held following the denial of Plaintiffs' applications for immigration benefits, they expressed an intention to file a Second Amended Complaint. *See* Dkt. 47. Defendants took the position that the Court lacks subject matter jurisdiction over such claims. *See id.* It was agreed at the Case Management Conference that Defendants' arguments regarding subject matter jurisdiction would be most efficiently resolved by allowing Plaintiffs to file a Second Amended Complaint and then having Defendants file a motion to dismiss, which would be briefed on an expedited schedule. *See id.*

Plaintiffs filed the Second Amended Complaint on March 30, 2026. Dkt. 49 ("SAC"). Before that time, all named Parties had consented to the jurisdiction of a magistrate judge. Dkt. 6, 16. The SAC named new individual Defendants in both their individual and official capacities. *See* SAC ¶¶ 6-8. The named individual Defendants consented to a magistrate judge in their official capacities. Dkt. 55. Because those Defendants had not consented in their individual capacities, this case was reassigned to a District Judge. Dkt. 60-63. At a June 2, 2026 Case Management Conference before the District Judge and in a written notice filed thereafter,

Plaintiffs dismissed the claims against the individual Defendants in their individual capacities. Dkt. 73, 74. Because all remaining Parties have consented to the jurisdiction of a magistrate judge (Dkt. 6, 16, 55), the case was reassigned back to the undersigned on June 3, 2026. Dkt. 78.

Now before the Court is the Government's motion to dismiss the SAC, which is fully briefed. Dkt. 56 (motion), 57 (opposition), 58-1 (reply).

Also before the Court is Plaintiffs' emergency motion for a temporary restraining order or temporary injunction, filed on June 6, 2026. Dkt. 81 (the "TRO Motion"). The Government filed a response on the same day. Dkt. 82.

## II.   THE GOVERNMENT'S MOTION TO DISMISS THE SAC

### A.   LEGAL STANDARD

The Government's motion to dismiss the SAC is based exclusively on Federal Rule Civil Procedure 12(b)(1), which permits a party to seek dismissal of an action for lack of subject matter jurisdiction. Dkt. 56 at i. Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, the party challenging jurisdiction asserts that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction. *Id.* In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," and the court may review evidence beyond the complaint. *Id.* "It is to be presumed that a cause lies outside" the limited jurisdiction of the federal courts, "and the burden of establishing the contrary rests on the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994) (citations omitted).

### B.   DISCUSSION

#### 1.   First through Fourth Causes of Action

The Government argues that the Immigration and Naturalization Act ("INA") strips this Court of jurisdiction over Plaintiffs' claims, citing 8 U.S.C. §§ 1252(a)(2)(B)(i) and (ii), 1255, and 1324a and *Patel v. Garland*, 596 U.S. 328, 329 (2022). Dkt. 56 at 8. The Court discussed those legal authorities at length in its PI Order in this case (Dkt. 35 at 8-18) and in its preliminary injunction order in *Behdin v. Edlow*, No. 26-cv-00566-SVK, 2026 WL 1031079, at *5-11 (N.D.

United States District Court
Northern District of California

Cal. Apr. 16, 2026). In relevant part, the Court concluded that it had subject matter jurisdiction in those cases because Plaintiffs did not seek review of the decisions on their applications for immigration benefits but instead sought review of the Government's failure to issue a decision on their applications because of USCIS's adjudication hold policy set forth in PM-0192 and PM-0194. *See, e.g.,* Dkt. 35 at 11; *Behdin*, 2026 WL 1031079, at *6. Numerous other courts that have considered the USCIS adjudication hold policies have since reached similar conclusions. *See, e.g., Dorcas*, -- F. Supp. 3d --, 2026 WL 1622708, at *11-36 and cases cited therein.

As discussed in the PI Order in this case (*see* Dkt. 35 at 10-11), in *Nakka v. USCIS,* the Ninth Circuit concluded that "§ 1252(a)(2)(B)(i) does not categorically strip federal district courts of jurisdiction" to hear claims that "challenge generally applicable agency policies without referring to or relying on denials of individual applications for relief." *Nakka v. USCIS,* 111 F.4th 995, 999 (9th Cir. 2024); *see also id*. at 1009. As the Ninth Circuit explained in its subsequent decision in *Garcia v. USCIS*, "*Nakka* [] concluded that Congress clearly indicated that it did not intend § 1252(a)(2)(B)(i) to preclude district court jurisdiction over collateral policy and procedure claims when not made in connection with a challenge to the denial of individual discretionary relief." *Garcia v. USCIS*, 146 F.4th 743, 749 (9th Cir. 2025) (internal quotation marks and citations omitted). The Ninth Circuit held in both *Nakka* and *Garcia* that it could not hear such "collateral" claims by the particular plaintiffs in those cases. In *Nakka*, a putative class action challenging a USCIS policy relating to visa retrogression, "only one of the named Plaintiffs filed an application for adjustment of status." *Nakka,* 111 F.4th at 1010. The Ninth Circuit held that the "non-filing" plaintiffs did not have ripe claims. *Id.* at 1010-11. Although the one "filing" plaintiff had a ripe claim, the court lacked jurisdiction for a different reason: her application for adjustment of status had been denied, so under 8 U.S.C. § 1252(a)(2)(D) her challenge was "channeled" into a different, more limited review process. *Id.* at 1012, 1014-15. The plaintiff in *Garcia* fell into the same category as the one "filing" plaintiff in *Nakka* because USCIS had denied her application for adjustment of status. *Garcia,* 146 F.3d at 751.

At the time of the PI Order, the Court found that the Plaintiffs in this case fell into "a third category not at issue in *Nakka* or *Garcia*:  they have filed petitions for adjustment of status but USCIS has not decided the petitions (and will not do so) because of the adjudication hold policy."

Dkt. 35 at 10-11.  Following issuance of the PI Order, however, USCIS denied Plaintiffs' I-485 and I-765 applications and issued NOIRs for both of Plaintiff Varniab's approved I-140s.  SAC at 1-2.  The Government now attempts to characterize the claims in the SAC as relying for ripeness on the USCIS's denials of their immigration benefits applications.  Therefore, the Government argues, the Court lacks jurisdiction because Plaintiffs "are *necessarily* challenging USCIS's judgment, decisions, and finding."  *See, e.g.,* Dkt. 56 at 12.  Because the analysis of whether the Court has subject matter jurisdiction depends in part on the legal theory underpinning each of the claims in the SAC, the Court separately addresses Plaintiffs' constitutional claims (the first and second causes of action in the SAC) and their APA claims (the third and fourth causes of action in the SAC).

### a.    First and Second Causes of Action:  Constitutional Claims

The Government's argument that Plaintiffs are "*necessarily* challenging USCIS's judgment, decisions, and finding" (Dkt. 56 at 12 (emphasis in original)) overlooks critical aspects of the first and second causes of action in the SAC.  In the first cause of action, Plaintiffs allege a constitutional violation, specifically that "USCIS has an unannounced Policy of denying immigration benefit requests—including adjustments of status—for litigants who successfully challenge USCIS adjudication hold policies in federal court."  SAC ¶ 113.  Plaintiffs allege that "[t]he denials of Plaintiffs' I-485 and I-765 applications are evidence of USCIS's retaliatory policy; it (sic) is not the object of this claim."  SAC ¶ 120.  Plaintiffs claim that the alleged USCIS policy is unconstitutional because it penalizes applicants for exercising their First Amendment rights in bringing lawsuits like this one.  SAC ¶¶ 122-140.

The second cause of action alleges another constitutional violation:  denial of Plaintiff Varniab's I-485 application (which led to the denial of Plaintiffs' other applications) and issuance of NOIRs on her previously-approved I-140 petitions in retaliation for her exercise of her First Amendment rights (participation in this lawsuit) and without an impartial adjudicator as required by the Fifth Amendment's Due Process Clause.  Dkt. 49 ¶¶ 149-168.

The Ninth Circuit recently held that "we retain jurisdiction over colorable constitutional claims that challenge the <u>procedures</u> used by the agency [USCIS]."  *Chairez v. Mayorkas*, 168 F.4th 1227, 1237 (9th Cir. 2026) (per curiam) (emphasis in original).  The Ninth Circuit held

9

that its earlier decision in *Poursina v. USCIS*, 936 F.3d 868 (9th Cir. 2019) "controls" on this question. *Id*. The Government does not address *Chairez* or *Poursina* in its briefing on the motion to dismiss. *See* Dkt. 56, 58-1.

One of the claims made by the plaintiff in *Poursina* concerned his request for a national-interest waiver of a labor-certification requirement associated with his application for an employment-based visa. *Poursina,* 936 F.3d at 876. USCIS denied the plaintiff's application when he did not respond to a request for evidence issued by the agency. *Id.* Plaintiff alleged that he never received a copy of the request for evidence or the subsequent denial of his application and therefore contended that the denial violated his right to due process. *Id.* Although the Ninth Circuit ultimately rejected the plaintiff's constitutional claim "on the merits," it held that "[t]his constitutional claim is not subject to § 1252(a)(2)(b)(ii)'s jurisdictional bar," explaining that "decisions that violate the Constitution cannot be discretionary, so claims of constitutional violations are not barred by § 1252(a)(2)(B)." *Id.* (internal quotation marks and citation omitted).

In *Chairez*, the Ninth Circuit held that USCIS's denial of a specific benefit (the plaintiff's request for a waiver of inadmissibility) fell within the jurisdiction-stripping provisions of section 1252(a)(2)(B)(ii). *Chairez,* 168 F.4th 1232. However, the plaintiff in *Chairez* had an additional "constitutional claim" that USCIS "violated procedural due process because, he asserts, the decision maker was biased against him." *Id.* at 1237. The court in *Chairez* discussed the distinction drawn in *Poursina* between claims asserting constitutional arguments and those challenging discretionary agency decisions:

> In *Poursina*, as here, the agency denied the waiver of a requirement for a visa; the plaintiff then filed suit in district court; and we held that the statute granted discretion to the agency, so the agency's decision was generally unreviewable. 936 F.3d at 870-75. But we also held in *Poursina* that we <u>retained</u> jurisdiction over the plaintiff's constitutional argument that he had been deprived of due process because he allegedly failed to receive notice from the agency. *Id.* at 875-76. We held that "[t]his constitutional claim is not subject to § 1252(a)(2)(B)(ii)'s jurisdictional bar,' and we addressed the merits of the claim. *Id.* at 876.

168 F.4th at 1237 (emphasis in original). The court in *Chairez* likened the plaintiff's constitutional claim in that case to the one in *Poursina* in that it was "purely a procedural due process claim challenging the agency's process, not a claim challenging the underlying merits of

10

the agency's discretionary determination." *Id.* (citations omitted).[3] The majority in *Chairez* concluded that *Poursina* is not in tension with *Garcia* or *Nakka* "because the plaintiff in *Garcia* challenged the denial of her U visa only on statutory—not constitutional—grounds" and because in *Nakka* "no plaintiff challenged the agency's procedures in adjudicating a specific application." *Chairez,* 168 F.4th at 1237-39. The Ninth Circuit in *Chairez* thus concluded that "we have jurisdiction to review Plaintiff's procedural constitutional claim—if it is colorable." *Chairez*, 168 F.4th at 1237.

The Ninth Circuit ultimately concluded that the plaintiff's constitutional claim in *Chairez* was "entirely speculative and not colorable." *Id.* at 1238. Here, by contrast, the Court finds that the constitutional claims set forth in the first and second causes of action are colorable, considering the specific facts alleged in the SAC (*see, e.g.,* SAC ¶¶ 112-168), as further explained in Plaintiffs' TRO Motion (*see, e.g.,* Dkt. 81 at 10-13), and as discussed in the Court's analysis of Plaintiffs' likelihood of success on those claims in section III.B.1. below. *See Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001) ("To be colorable in this context, the alleged violation need not be "substantial," [] but the claim "must have some possible validity." [] (citations omitted)). Notably, the Government does not move to dismiss the SAC under Rule 12(b)(6) for failure to state a claim and does not otherwise argue in the opening brief on the motion to dismiss that the claims of the SAC are not colorable.[4]

Moreover, although the Government criticizes Plaintiffs' claims based on the fact that their

---

[3] The INA's savings clause, § 1252(a)(2)(D), "channels" judicial review of certain constitutional and legal claims into a petition for review from a final order of removal filed with the appropriate court of appeals. 8 U.S.C. § 1252(a)(2)(D). However, in support of its holding in *Chairez*, the Ninth Circuit cited *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) as "rejecting the argument that § 1252(a)(2)(B) stripped jurisdiction over a procedural due process claim brought in **district court** and addressing the merits." *Chairez*, 168 F.4th at 1237 (emphasis added). *Chairez* thus indicates that colorable constitutional claims challenging the procedures used by USCIS, such as the first and second causes of action in this case, are properly brought in district court. *See* 168 F.4th at 1237-38; *see also id.* at 1238 (Bea, J., concurring) (stating that "the majority asserts … that procedural due process claims as to agency actions which deny a requested visa status may be brought in federal district court").

[4] The Government's reply brief argues that even if the Court considers Plaintiffs' constitutional claims, those claims are "unsupported by facts" (Dkt. 58-1 at 1), but the Government did not make this argument in its opening brief. In any event, the Court disagrees for the reasons discussed in section III.B.1. below.

United States District Court
Northern District of California

immigration applications have been denied (*see, e.g.,* Dkt. 56 at 8), the Ninth Circuit indicated in *Chairez* that a plaintiff challenging agency polices must "challenge[] the agency's procedures *in adjudicating a specific application.*" *Id.* at 1238 (emphasis added). Here, Plaintiffs' constitutional claims do so. *See, e.g.,* SAC ¶ 120 (alleging that denial of Plaintiffs' I-485 and I-765 applications "are evidence of USCIS's retaliatory policy"); SAC ¶ 152 (challenging "the constitutionally impermissible reason" for the USCIS's decision to deny Plaintiff Varniab's I-485 application).

The Court therefore concludes that it has subject matter jurisdiction over Plaintiffs' first and second causes of action because they set forth the type of constitutional claims over which the Ninth Circuit has found jurisdiction in *Chairez* and *Poursina*. The first cause of action in the SAC alleges that USCIS has an unconstitutional policy and practice of retaliating against applicants for the exercise of their First Amendment rights. SAC ¶¶ 112-142. As explained in the PI Order, section 1252(a)(2)(B) does not bar judicial review of categorical challenges to agency policies and procedures concerning the adjudication of applications for immigration benefits. *See generally* PI Order at 8-18. Other recent cases are in accord. *See, e.g., Dorcas*, 2026 WL 1622708, at * 11 (stating that "[t]he Government interprets [section 1252(a)(2)(B)(i) far too broadly" because "[i]n the context of judicial review over immigration benefit  determinations, the Supreme Court has long differentiated between the direct review of individual denials of applications and general collateral challenges to [unlawful] practices and policies used by the agency in processing applications" (internal quotation marks and citations omitted)); *id.* at *13 and cases cited therein ("As many courts have held, Section 1252(a)(2)(B)(ii)—much like Section 1252(a)(2)(B)(i)—bars judicial review of orders denying discretionary benefits in *individual cases*, but the statute does not foreclose *categorical* challenges to agency policies and procedures concerning the adjudication of those benefits" (citations omitted; emphasis in original)). Of particular note, the second cause of action in the SAC closely resembles the constitutional claim over which the Ninth Circuit found jurisdiction existed in *Chairez*:  just as Plaintiffs assert in the second cause of action in this case (*see* SAC ¶¶ 143-168), the plaintiff in *Chairez* "argue[d] that the agency violated procedural due process because, he asserts, the decision maker was biased against him." *Chairez*, 168 F.4th at 1237.

Accordingly, the Government's motion to dismiss the first and second causes of action is

**DENIED** insofar as those causes of action relate to the denials of Plaintiffs' Form I-465 and Form I-785 applications. Plaintiffs' constitutional claims relating to the NOIRs are discussed in section II.B.1.c. below, where the Court also **DENIES** the Government's motion to dismiss the first and second causes of action insofar as they relate to the NOIRs.

### b. Third and Fourth Causes of Action: APA Claims

The third and fourth causes of action allege violations of the APA, specifically violation of 5 U.S.C. § 706(2)(D) (third cause of action, SAC ¶¶ 169-174) and violation of 5 U.S.C. § 706(2)(A)-(C), (E), and (F) (fourth cause of action, SAC ¶¶ 175-182). As reflected in the allegations of the SAC and Plaintiffs' arguments in their opposition to the motion to dismiss, the third and fourth causes of action allege that denial of Plaintiffs' immigration benefit applications and issuance of the NOIRs resulted from "legal errors" under the APA including: (1) the INA does not require a job offer requirement for the EB-2 or EB-1A I-140s; (2) because there is no job offer requirement, Plaintiff Varniab's alleged representation about her future plans was not a "material misrepresentation"; and (3) even if there is a job offer requirement, the Government ignored the leniency and job portability provided by Congress to employment-based immigrants. *See* Dkt. 57 at 6-7. Plaintiffs also allege "procedural violations" of the APA such as USCIS's denial of Plaintiff Varniab's applications: (1) based on adverse information of which she was unaware and without issuance of a request for evidence or Notice of Intent to Deny; and (2) by an attorney rather than an adjudicator. *See* Dkt. 57 at 8. Plaintiffs contend that they are not challenging USCIS's fact-finding and argue that section 1252(a)(2)(B)(i)-(ii) does not strip the Court of jurisdiction to review these "questions of law" and "procedural violations." Dkt. 57 at 6-8.

This section will discuss Plaintiffs' APA claims concerning the adjudication of their Form I-485 applications for adjustment of status and Form I-765 applications for employment authorization. The NOIR-related allegations are addressed in section II.B.1.c. below.

The Ninth Circuit's recent decision in *Chairez* again provides useful guidance, this time regarding the circumstances under which APA claims are subject to judicial review, by explaining that the APA "does not apply when other 'statutes preclude judicial review' of the agency action in question, or when the 'agency action is committed to agency discretion by law.'" 168 F.4th at

1231 (citing 5 U.S.C. § 701(a)). *Chairez* identifies 8 U.S.C. § 1252(a)(2)(B) as one of the "statutes that preclude judicial review" as referenced in 5 U.S.C. § 701(a)(1). *See* 168 F.4th at 1231 (holding that "the APA's express limitation that it does not apply when 'statutes preclude judicial review,' 5 U.S.C. § 701(a)(1), applies whenever the agency action at issue falls within the INA's jurisdictional bar in section 1252(a)(2)(B)(ii)."). The Court has already concluded in section II.B.1.a. above, that neither section 1252(a)(2)(B)(i) or (ii) preclude judicial review of Plaintiffs' *constitutional* claims in this case, but the Court must now determine whether either of those subsections bar judicial review of Plaintiffs' *statutory* APA claims.

One issue in *Chairez* was whether APA claims fell within section 1252(a)(2)(B)(ii), so the Court will begin there. As discussed above and in *Chairez*, subsection (B)(ii) strips federal courts of jurisdiction to review "any other decision or action of the … Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the … Secretary." 8 U.S.C. § 1252(a)(2)(B)(ii); *see also* 168 F.4th at 1231. *Chairez* characterizes this provision as "expansive." 167 F.4th at 1232. The Ninth Circuit held that judicial review was precluded in that case under subsection (B)(ii) in because the statute at issue, which concerned the plaintiff's request for a waiver of admissibility, "allows the Secretary, in the Secretary's discretion, to waive certain requirements 'if the Secretary of Homeland Security considers it to be in the public or national interest to do so'" and thereby conferred discretion on the Secretary. 168 F.4th at 1232. The Ninth Circuit also explained that if "Congress signals" in the relevant statute "that it is merely providing guidance to the agency in its exercise of discretion, the discretionary judgment all as a whole falls within the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii)," distinguishing such statutes from those that "grant discretion to an agency, but only if certain statutory requirements are met." *Id.* at 1234.

In this case, the Government has identified statutes which, it contends, give USCIS discretion to adjust the status of aliens and grant them employment authorization. *See* Dkt. 56 at 9-11 (citing 8 U.S.C. §§ 1324a(a)(1)(A), 1324a(a)(1)(h)(3), 1255).[5] Plaintiffs attempt to cast their

---

[5] Relevant to Plaintiffs' applications for employment authorization, 8 U.S.C. § 1324a(a)(1)(A), (h)(3) state that the Attorney General may authorize an alien for employment. The statute concerning adjustment of status, 8 U.S.C. § 1255(a), states in relevant part that "[t]he status of an alien who was inspected and admitted . . . into the United States . . . may be adjusted by the

United States District Court
Northern District of California

claims as seeking review not of discretionary decisions but of issues such as "legal errors that resulted in a finding of a nondiscretionary denial" and imposing "a job offer requirement that does not exist for I-140s." *See* Dkt. 57 at 4-8. However, the Court finds that Plaintiffs have failed to show that the APA claims in the SAC fall outside of the "expansive" scope of section 1252(a)(2)(B)(ii). *See Chairez*, 168 F.4th at 1232; *see also Poursina*, 936 F.3d at 875-86 (holding that subsection (B)(ii) barred review of APA claims that USCIS regulations and precedential decisions misinterpreted statutes regarding national interest waiver, that the agency failed to consider certain evidence, and that the agency misinterpreted the evidence it did consider, rejecting argument that those were "purely legal" decisions and finding instead that they were a "core exercise of the discretion that the statute vests in the government" that are not subject to judicial review).

Judicial review of Plaintiffs' APA claims concerning their I-485 applications, as currently pleaded, is barred for an additional reason. As explained in *Chairez*, section 1252(a)(2)(B)(i) and (ii) " deal with different sets of discretionary relief," with subsection (B)(i) enumerating several statutory provisions, none of which were at issue in that case. 168 F.4th at 1231. Here, by contrast, denial of Plaintiffs' Form I-485 applications for adjustment of status occurred under 8 U.S.C. § 1255, which is one of the statutes identified in subsection (B)(i). *See* 8 U.S.C. § 1252(a)(2)(B)(i). As presently pleaded, Plaintiffs' APA claims regarding their I-485s concern the "act of granting or denying an individual application for relief" under 8 U.S.C. § 1255, not "collateral actions challenging general policies and procedures." *See Nakka,* 111 F.4th at 1004, 1009; *see also Garcia,* 146 F.4th at 749. The jurisdictional bar of that section encompasses not only the agency's ultimate decision but also "factual findings," meaning that federal courts are precluded from reviewing "facts found as part of discretionary-relief proceedings." *Patel*, 596 U.S. at 339, 347. Accordingly, judicial review of the APA claims in the SAC concerning denial of Plaintiffs' I-485 applications is also barred under subsection (B)(i).

Plaintiffs have failed to carry their burden of demonstrating that the Court has subject

---

Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence" if certain prerequisites are met.

United States District Court
Northern District of California

matter jurisdiction over the APA claims in the third and fourth causes of action concerning adjudication of Plaintiffs I-485 and I-765 applications, as those claims appear in the SAC. *See Kokkonen*, 511 U.S. at 377. The Government's motion to dismiss for lack of subject matter jurisdiction therefore is **GRANTED** as to the third and fourth causes of action in the SAC insofar as those claims relate to denial of Plaintiffs I-485 and I-765 applications. Plaintiffs' APA claims relating to the NOIRs are discussed in section II.B.1.c. below, where the Court also **GRANTS** the Government's motion to dismiss the third and fourth causes of action insofar as they relate to the NOIRs.

Other circuits have "recognized a narrow judicial path for challenging purely *procedural* rulings" under the APA on immigration benefit applications or petitions that do not "implicate a petition's merits." *Doe v. McAleenan*, 926 F.3d 910, 914-15 (7th Cir. 2019) (emphasis in original); *see also Kurapati v. USCIS*, 775 F.3d 1255, 1262 (11th Cir. 2014) (distinguishing between "judicial review of the I-140 revocation and judicial review of whether the agency complied with the applicable administrative procedure in revoking the I-140" and holding that the district court had jurisdiction to review the latter type of APA claim). As presently drafted, Plaintiffs' APA claims concerning the denials of their applications for adjustment of status and for employment authorization do not identify procedural or legal issues that are sufficiently discrete from the merits of the decisions on those applications. However, the Court grants Plaintiff **LEAVE TO AMEND** the third and fourth causes of action if they wish to attempt to address this deficiency and can do so in accordance with the Ninth Circuit authority discussed in this section. The Court will discuss the timing and parameters of any such amendment at the June 18, 2026 preliminary injunction hearing.

### c. Additional Jurisdictional Arguments Directed at NOIR Claims

The Government offers the following additional arguments as to why the Court lacks jurisdiction over Plaintiffs challenges relating to the NOIRs: (1) those claims are not yet ripe because Plaintiff Varniab's approved I-140 petitions have not yet been revoked, and (2) even if Plaintiffs can challenge revocation before it occurs, section 1252(a)(2)(B)(ii) strips the Court of jurisdiction because under 8 U.S.C. § 1155, "Congress granted DHS discretionary authority to

16

revoke any petition for status or classification 'at any time' for 'what he (sic) deems to be good and sufficient cause.'" Dkt. 56 at 10-11.[6]

Plaintiffs' claims regarding the NOIRs again fall into two categories: APA claims (*see, e.g.,* SAC ¶¶ 172, 181) and constitutional claims (*see, e.g.., id.* ¶¶ 149, 154, 155, 159-160, 172, 173). The outcome on the Government's ripeness argument is different for each category of claims.

Plaintiff Varniab's I-140 petitions had not been revoked and she had not exhausted the administrative process, at least at the time the SAC was filed. *See* Dkt. 49-16, 49-17; *see also* Dkt. 56 at 10-11. Thus, the APA claims based on the NOIRs must be dismissed either because they are not ripe or she has not exhausted her administrative remedies. *Adab v. USCIS*, No. 15-248 (JEB), 2017 WL 4358686, at \*5 (D.D.C. Sep. 29, 2017) (dismissing suit based on issuance of NOIRs as not ripe because USCIS had initiated revocation proceedings but plaintiff might convince the agency not to revoke her petition); *Diakite v. USCIS*, No. 23-cv-00725 (ALC), 2024 WL 1053610, at \*3 (S.D.N.Y. Mar. 11, 2024) (dismissing suit for mandamus relief concerning NOIRs because plaintiff had not exhausted administrative remedies or pleaded an exception). Because the APA claims concerning the NOIRs are not yet ripe or suitable for determination, the Court does not reach the issue of whether it would have subject matter jurisdiction over APA claims concerning revocation of Plaintiff Varniab's I-140s.

By contrast, under the circumstances of this case, the Court concludes that Plaintiffs' constitutional claims concerning the NOIRs, which allege that the NOIRs were issued in retaliation for Plaintiffs' exercise of their First Amendment rights, are ripe. *See Gorbach v. Reno*, 219 F.3d 1087, 1091-91 (9th Cir. 2000) (rejecting argument that claims, including due process claims, brought by recipients of NOIRs concerning Attorney General's authority to issue regulations concerning revocation of naturalization were not ripe "because these are individuals against whom proceedings are pending under the new regulations, and who would have to defend themselves effectively or lose their citizenship in the administrative proceedings were it not for the

---

[6] 8 U.S.C. § 1155 provides that "[t]he Secretary of DHS may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved" under 8 U.S.C. § 1154.

injunction that they have obtained, they have standing to challenge the authority of the Attorney General to promulgate the new regulations."); *see also Gorbach v. Reno*, 179 F.3d 1111, 1116 (9th Cir.), *reh'g granted, opinion withdrawn,* 192 F.3d 1329 (9th Cir. 1999), and *on reh'g en banc,* 219 F.3d 1087 (9th Cir. 2000) (identifying nature of claims in the case, including due process claims). Moreover, regardless of whether USCIS has discretion to revoke approved I-140 petitions, it does not have discretion to violate the Constitution. *Poursina,* 936 F.3d at 876. For the reasons discussed in section II.B.1.a. above, the Court has jurisdiction over Plaintiffs' constitutional claims concerning the NOIRs.

Accordingly, the Government's motion to dismiss as unripe the third and fourth causes of action (APA claims) as they relate to Plaintiffs' challenge to the NOIRs is **GRANTED.** The Government's motion to dismiss the first and second causes of action (constitutional claims) as they relate to Plaintiffs' challenge to the NOIRs is **DENIED**.

### 2.   Fifth Cause of Action:  Writ of Mandamus, 28 U.S.C. § 1361 and

With respect to Plaintiffs' fifth cause of action seeking mandamus relief, the Government argues that courts lack mandamus jurisdiction in the immigration context when "the application at issue has been denied and there is no outstanding duty the court could compel." Dkt. 56 at 12-13. The SAC alleges that the Government has a duty stemming from the due process requirements of the Fifth Amendment to adjudicate their applications and NOIRs without bias or retaliation. *See, e.g.,* SAC ¶¶ 196-189. District courts have mandamus jurisdiction to enforce constitutional duties. *Kapp v. Shweiker*, 556 F. Supp. 16, 23 (N.D. Cal. 1981) (denying motion to dismiss mandamus claim, finding that court had jurisdiction where plaintiff alleged that his constitutional due process rights were violated by Secretary of Health and Human Services' failure to allow him a hearing on his application for Social Security benefits). Accordingly, the Government's motion to dismiss the fifth cause of action is **DENIED.**

### 3.   Sixth Cause of Action:  All Writs Act, 28 U.S.C. § 1651

The Government argues that the Court lacks subject matter jurisdiction over Plaintiffs' sixth cause of action under the All Writs Act because the court's power to issue writs "is contingent on that court's subject-matter jurisdiction over the case or controversy," which the

United States District Court
Northern District of California

Government argues is lacking here. Dkt. 56 at 13. As discussed above, the Court has subject matter jurisdiction over several claims in this case. Accordingly, the Government's motion to dismiss the sixth cause of action is **DENIED.**

### 4.      Seventh Cause of Action: *Bivens* Claim

The seventh cause of action in the SAC purported to assert a *Bivens* claim against Defendants Hannah Lam, Carrie M. Selby, and Jane Does 1-10. SAC ¶¶ 195-198. In the motion to dismiss the SAC, the Government characterized the *Bivens* claim as being brought against the individual Defendants in their individual capacity because a "*Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." Dkt. 56 at 14 (quoting *Consejo De Desarrollo Economico De Mexicali, A.C. v. United States,* 482 F.3d 1157, 1173 (9th Cir. 2007) (citation omitted)); *see also Ardalan v. McHugh*, No. 13-cv-01138-LHK, 2012 U.S. Dist. LEXIS 169470, at *32 (N.D. Cal. Nov. 27, 2013) ("*Bivens* suits against federal employees acting in their *official* capacities are barred by sovereign immunity, and the Court lacks subject matter jurisdiction to hear such claims" (emphasis in original). In their opposition to the motion to dismiss, Plaintiffs did not dispute this analysis, thereby effectively conceding that their *Bivens* claim was brought against the individual Defendants in their individual capacities. *See* Dkt. 57 at 13-14. Plaintiffs subsequently voluntarily dismissed all claims against the individual Defendants in their individual capacities. Dkt. 74. Accordingly, the motion to dismiss the *Bivens* claim is **DENIED AS MOOT** because Plaintiffs have already dismissed that claim.

### 5.      Eighth through Eleventh Causes of Action: FTCA Claims

Plaintiffs concede that they have not yet exhausted their administrative remedies on the FTCA claims contained in the eighth, ninth, tenth, and eleventh causes of action in the SAC (*see* Dkt. 57 at 14), and those causes of action are therefore **DISMISSED WITHOUT PREJUDICE.**

////

////

////

19

**6.** **Conclusion on the Government's Motion to Dismiss the SAC**

For the reasons discussed above, the Court **ORDERS** as follows:

1. The third and fourth causes of action are **DISMISSED WITH LEAVE TO AMEND.**

2. The Government's motion to dismiss the seventh cause of action is **DENIED AS MOOT** because Plaintiffs have already dismissed that claim.

3. The eighth, ninth, tenth, and eleventh causes of action are **DISMISSED WITHOUT PREJUDICE.**

4. Except as specified above, the Government's motion to dismiss the SAC is **DENIED**.

******

## III.   PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER OR TEMPORARY INJUNCTION

On June 9, 2026, Plaintiffs filed an emergency motion seeking a temporary restraining order or temporary injunction as follows:

(1) lifting the denial decisions on Plaintiffs' I-485s and I-765s;

(2) ceasing further action on Plaintiff Varniab's I-140s;

(3) compelling the Government to adjudicate Plaintiffs' I-765 applications and deliver EADs to them within 7 days, and/or otherwise provide employment authorization so Plaintiff Varniab can start her residency by June 22, 2026;

(4) directing the Government either to re-adjudicate the I-485s within 90 days or to file a status report identifying remaining adjudicatory steps and a date certain for decisions; and

(5) enjoining DHS and/or ICE from taking any action against Plaintiffs during the pendency of this action including any possible appeal process.

Dkt. 81 (the "TRO Motion").

Plaintiffs gave notice of the Government of the TRO Motion, and the Government filed a response the same day, stating that it opposes the motion because the Court lacks subject matter jurisdiction for the reasons briefed in connection with the Government's Motion to Dismiss the

SAC.  Dkt. 83.

For the reasons that follow, Plaintiffs' TRO Motion is **GRANTED IN PART and DENIED IN PART.**

### A.    LEGAL STANDARD

The "legal standards applicable to TROs and preliminary injunctions are substantially identical."  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (internal quotation marks and citation omitted).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Its purpose is to maintain the "status quo ante litem"—that is, "the last uncontested status which preceded the pending controversy"—pending a decision on the merits.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (finding "status quo ante litem" in trademark infringement suit "existed before [the defendant] began using its allegedly infringing logo") (internal quotation marks and citation omitted).

To obtain a TRO or preliminary injunction, Plaintiffs must establish that:  (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  A showing on all four *Winter* factors is required.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  However, the Ninth Circuit takes a "sliding scale" approach, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *Id.* at 1131; *see also Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).  Specifically, "a preliminary injunction may issue where 'serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor' if the plaintiff 'also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'"  *Planned Parenthood,* 122 F.4th at 844 (quoting *Cottrell*, 632 F.3d at 1135).

21

United States District Court
Northern District of California

B.      TRO FACTORS

1.      Likelihood of success

For the reasons discussed above in connection with the Government's motion to dismiss the SAC, the Court concludes it has subject matter jurisdiction over Plaintiffs' first and second causes of action (constitutional claims), and fifth and sixth causes of action (writ of mandamus/All Writs Act).

At a minimum, Plaintiffs have demonstrated that they are likely to succeed on the First Amendment retaliation theories set forth in the first and second causes of action.

Plaintiffs claim that USCIS retaliated against them for filing this lawsuit by denying their I-485 and I-765 applications and by issuing the NOIRs. *See* SAC ¶¶ 112-168. "A plaintiff claiming First Amendment retaliation must show that (1) [she] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Los Angeles Press Club v. Noem,* 171 F.4th 1179, 1188 (9th Cir. 2026) (quoting *AFGE v. Trump*, 148 F.4th 648, 654 (9th Cir. 2025) (per curiam).

Plaintiffs' filing and prosecution of this lawsuit are constitutionally protected activities. Supreme Court precedent "confirm[s] that the Petition Clause" in the First Amendment "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 386 (2011). "It has long been recognized that resident aliens enjoy the protections of the First Amendment." *Price v. U.S. I.N.S.*, 962 F.2d 836, 841 (9th Cir. 1991) (citations omitted).

Plaintiffs have demonstrated that they are likely to succeed in showing that the Government's actions in denying their applications for immigration benefits and in issuing the NOIRs could reasonably be expected to have a chilling effect on the exercise of the right to petition courts for the redress of grievances, including identifying lawsuits that they claim have been dismissed by plaintiffs fearing retaliation and social media posts in which immigrants express fears about filing litigation against the Government. SAC ¶¶ 131, 136; Dkt. 49-9.

The third factor, which requires a showing that First Amendment activity was a "substantial or motivating factor" in the Government's action against them, generally "can be met

22

with either direct or circumstantial evidence." *Los Angeles Press Club*, 171 F.4th at 1188-89 (internal quotation marks and citations omitted).  Plaintiffs have demonstrated a likelihood of success on their allegation that their protected activity in filing and prosecuting this lawsuit was a substantial or motivating factor in taking adverse action on their immigration applications. Plaintiffs' evidence in support of this allegation includes USCIS's letters denying Plaintiffs' Form I-485 and I-765 applications and the NOIRs issued by USCIS, which repeatedly refer to the declaration Plaintiff Varniab filed in this case and use that declaration as evidence of her supposed misrepresentations.  Dkt. 44-1.  Plaintiffs also allege that when they were interviewed by USCIS, the interviewer exhibited knowledge of this lawsuit and stated that an attorney would make the decision on Plaintiffs' applications.  Plaintiffs identify other alleged irregularities in the processing of their applications.  *See, e.g.,* SAC ¶¶ 60-61, 70-92.  Moreover, Plaintiffs offer evidence of a statement made by the Government in a brief filed in other litigation regarding the policies at issue here several weeks before USCIS denied Plaintiffs' applications, stating that if a court were to order "premature adjudication … without completed security screening, the result will be for USCIS to deny the application or petition …"  Dkt. 49-3.

The Government based its opposition to the TRO Motion purely on jurisdictional grounds and has not argued that Plaintiffs are unlikely to succeed on the merits of their claims.  *See* Dkt. 82.

Based on the record before the Court, it concludes that Plaintiffs are likely to succeed on the First Amendment retaliation-based claims in their first and second causes of action.

### 2.    Irreparable harm

The PI Order extensively discussed the type of irreparable harm that can stem from even a *delay* in processing immigration benefit applications.  *See* Dkt. 35 at 37-40.  Such harms are even more pronounced where, as here, immigration benefit applications have been *denied*.  Plaintiff Varniab has demonstrated that she faces imminent irreparable harm in the absence of immediate injunctive relief because she has an offer to begin a medical residency on June 22, 2026, but needs employment authorization to do so.  *See* Dkt. 29-1; Dkt. 42-3.  Plaintiff Langroudi's previous employment authorization expired on March 31, 2026, and his application for new employment

United States District Court
Northern District of California

United States District Court
Northern District of California

authorization was denied following the Court's issuance of the preliminary injunction.  As explained in the PI Order, in the Ninth Circuit, the loss of opportunity to pursue one's chosen profession constitutes irreparable harm.  PI Order at 38-39 and cases cited therein.

Not only have these and other harms to Plaintiffs been crystallized by the denial of their I-485 and I-765 applications, but as discussed above Plaintiffs have demonstrated that they are likely to succeed on their claims that their constitutional rights have been violated.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Further adverse action, such as revocation of the previously-approved I-140s, Plaintiffs' accrual of unlawful status, or the initiation of immigration proceedings that might result in their detention, removal, or deportation, will cause Plaintiffs additional irreparable harm.  *Doe v. Noem*, 778 F. Supp. 3d 1151, 1164-65 (W.D. Wash. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 140 S. Ct. 1891 (2020)); *see also Melendres*, 695 F.3d at 1002 (concluding that plaintiffs' reasonable fear of being subject to unlawful detention may constitute irreparable harm); *Dorcas*, 2026 WL 1622708, at *33.

The Government based its opposition to the TRO Motion purely on jurisdictional grounds and has not argued that Plaintiffs do not face irreparable harm.  *See* Dkt. 82.

Accordingly, Plaintiffs have demonstrated that they will suffer irreparable harm in the absence of a TRO that authorizes Plaintiffs to work and prohibits further adverse immigration actions against them while this lawsuit proceeds.

### 3.    Balance of equities and public interest

Where, as here, the Government is a party, the "balance of equities" and "public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Plaintiffs raise "serious First Amendment questions, ... [so] the balance of hardships tips sharply in [their] favor." *Los Angeles Press Club,* 171 F.4th at 1190 (citations omitted).  The Ninth Circuit has made clear that "it is always in the public interest to prevent the violation of a party's constitutional rights" and has "consistently recognized the significant public interest in upholding First Amendment principles."

*Los Angeles Press Club*, 171 F.4th at 1190 (citations omitted).  As discussed above, Plaintiffs' original challenges to the USCIS's adjudicative hold policies have been validated in this case and others, and they are likely to succeed on their claims that the Government retaliated against them for bringing this litigation.  They will likely suffer irreparable harm in the absence of an injunction while this case proceeds.

The Government based its opposition to the TRO Motion purely on jurisdictional grounds and has not argued that the balance of equities or the public interest tip in favor of the Government.  *See* Dkt. 82.

Accordingly, the balance of equities and the public interest favor issuance of a TRO that authorizes Plaintiffs to work and prohibits further adverse immigration actions against them while this lawsuit proceeds.

**C.    RELIEF**

Plaintiff's TRO Motion is **GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE.**  The Court **ORDERS** as follows:

1. Defendants and all of their respective officers, agents, servants, employees, attorneys, and any person in active concert or participation with them who receive actual notice of this Order are **ORDERED** to take all steps necessary to deliver an Employment Authorization Document ("EAD") or other employment authorization to Plaintiffs Zahra Shokri Varniab and Ashkan Pourabhari Langroudi by **June 16, 2026 at 5:00 p.m. Pacific Daylight Time.** The employment authorization issued to Plaintiff Varniab must be sufficient in scope and duration to permit her to commence her medical residency on June 22, 2026.  The employment authorizations issued to both Plaintiffs may not expire sooner than one year from issuance.

2. Defendants and all of their respective officers, agents, servants, employees, attorneys, and any person in active concert or participation with them who receive actual notice of this Order are **ENJOINED** from taking any further action on Plaintiffs' previously-approved I-140s.

3. Defendants and all of their respective officers, agents, servants, employees, attorneys, and

United States District Court
Northern District of California

any person in active concert or participation with them who receive actual notice of this Order are **ENJOINED** from taking any action in connection with the deportation, removal, or detention for immigration violations of Plaintiffs or either of them.

4. Counsel for Defendants must provide written notice of this Order to all officers, agents, servants, and employees of Defendant with responsibility for the foregoing matters by **June 15, 2026 at 5:00 p.m. Pacific Daylight Time.** Defendants must file a copy of the notice on the docket at the same time, and the notice filed with the Court must identify the first initial and last name, agency, and job title of all recipients of the notice. Defendants' notice may be filed under seal.

5. Plaintiffs' other requests for temporary relief are **DENIED WITHOUT PREJUDICE** to their ability to seek additional temporary or preliminary injunctive relief during the pendency of this action**.**

6. Defendants are **ORDERED TO SHOW CAUSE**, in writing and on or before **June 16, 2026 at 5:00 p.m. Pacific Daylight Time,** why a preliminary injunction incorporating the terms of this Order should not issue.

7. The videoconference hearing on **June 18, 2026 at 10:00 a.m.**, previously set on the Government's motion to dismiss, is hereby **CONVERTED** to a preliminary injunction hearing.

8. This Order **SHALL** take effect immediately and shall remain in effect through and including **June 24, 2026 at 11:59 p.m. Pacific Daylight Time** unless modified by the Court.

9. The Court finds that a bond is not required for this temporary restraining order under Federal Rule of Civil Procedure 65(c) because the Government did not request a bond or

////

////

////

////

////

submit any evidence that it is likely to suffer damages from the injunction. *See*

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.

2003).

**SO ORDERED.**

Dated: June 12, 2026

_____
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

27